**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE L. McNEILL, | ) | No. ED CV 12-304-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 28, 2012, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on March 12, 2012, and March 13, 2012.  The parties filed a Joint Stipulation on December 21, 2012, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 4, 1955.  [Administrative Record ("AR") at 95.]  She has an eleventh grade education, and has past relevant work experience as a retail sales clerk and a retail store department manager.  [AR at 114, 119, 787.]

On November 8, 2001, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been disabled since May 31, 1988, due to lupus, fibromyalgia, interstitial cystitis, irritable bowel syndrome, rheumatoid arthritis, sensitivity to light, and other impairments. [AR at 95-97, 112-21.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 45-49, 51-55.]  A hearing was held on March 12, 2003, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 615-49.]  On July 10, 2003, the ALJ determined that plaintiff was not disabled.  [AR at 36-44.]   On December 16, 2005, the Appeals Council remanded the matter for further consideration by the ALJ.  [AR at 76-77.]  A second ALJ held a hearing on April 6, 2006, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 650-84.]  On October 16, 2006, that ALJ (the "2006 ALJ") determined that plaintiff was not disabled.  [AR at 13-19, 650.] The Appeals Council denied plaintiff's request for review on June 9, 2008.  [AR at 5-8.]  Plaintiff then filed a civil action in this Court in Case No. ED CV 08-1062-PLA, which resulted in a Judgment of Remand pursuant to a Stipulation to Voluntary Remand.  [AR at 706-09.]

On remand, a third ALJ held a hearing on January 14, 2010, at which time a medical expert and a vocational expert testified.  [AR at 747-78.]  On March 25, 2010, the third ALJ determined that plaintiff was not disabled.  [AR at 688-95.]  Plaintiff then filed a second civil action in this Court in Case No. ED CV 10-1090-PLA.  On March 14, 2011, the Court entered judgment for plaintiff and remanded the case back to the Commissioner for further proceedings.  [AR at 802-18.]  On May 6, 2011, the Appeals Council remanded the case back to an ALJ.  [AR at 801.]   On September 22, 2011, the third ALJ held another hearing, at which time plaintiff again appeared with counsel and testified on her own behalf.  A different vocational expert also testified.  [AR at

822-54.] On November 18, 2011, the third ALJ (the "ALJ") again determined that plaintiff was not disabled.  [AR at 782-89.]  This action followed.

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/

/

/

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/

/

/

/

/

1   **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

2          In this case, at step one, the ALJ concluded that plaintiff did not engage in any substantial

3   gainful activity from her alleged disability onset date, May 31, 1988,[1] to December 31, 1993, her

4   date last insured.  [AR at 784.]  At step two, the ALJ concluded that plaintiff has the severe

5   impairments of: a history of gallbladder disease consistent with cholelithiasis, resulting in a

6   cholecystectomy; and chronic pelvic and neck pain.  [Id.]  At step three, the ALJ concluded that,

7   through plaintiff's date last insured, her impairments did not meet or equal any of the impairments

8   in the Listing.  [Id.]  The ALJ further found that, through her date last insured, plaintiff retained the

9   residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. §

10  404.1567(a),[3] and specifically to "lift or carry 10 pounds occasionally and less than 10 pounds

11  frequently; stand and walk two hours out of an eight-hour day; [and] sit eight hours out of an eight-

12  hour day."  The ALJ also found that: plaintiff can occasionally engage in postural activities and in

13  neck motion, "but should avoid extremes of motion"; her "head should be held in a comfortable

14  position most of the time," though she can only "maintain a fixed head position for 15 to 30 minutes

15  at a time, one third of the day"; she "must work in close proximity to a restroom"; and she "would

16  be expected [to] miss work once or twice per month."  [AR at 785.]  At step four, the ALJ

17  concluded that plaintiff was unable to perform any past relevant work through her date last

18  insured.  [AR at 787.]  At step five, the ALJ found, relying on the Medical-Vocational Guidelines

19  and the vocational expert's opinion, that through plaintiff's date last insured, there were jobs that

20  existed in significant numbers in the national economy that she could have performed.  [AR at

21

22  _____

23  [1]     The ALJ's decision incorrectly uses May 31, <u>1998</u>, instead of May 31, <u>1988</u>, as plaintiff's
    alleged disability onset date.  [<u>See</u> AR at 784, 789.]  In summarizing the ALJ's decision, the Court
24  substitutes the correct date of May 31, 1988, as plaintiff's alleged onset date.  [AR at 113.]

25  [2]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
    <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
27  [3]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
    or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined
28  as one which involves sitting, a certain amount of walking and standing is often necessary in
    carrying out job duties."  20 C.F.R. § 404.1567(a).

1    788.]  Accordingly, the ALJ found that plaintiff was not disabled from May 31, 1988, to December

2    31, 1993.

3

4                                              **V.**

5                                     **THE ALJ'S DECISION**

6          Plaintiff contends that the ALJ improperly: (1) rejected the opinions of her treating physician

7    and an examining physician, and (2) discounted her credibility.  [Joint Stipulation ("JS") at 5-8, 12-

8    17.]  As set forth below, the Court agrees with plaintiff and remands the matter for further

9    proceedings.

10

11   **A.    TREATING PHYSICIAN AND EXAMINING PHYSICIAN OPINIONS**

12         In evaluating medical opinions, the case law and regulations distinguish among the opinions

13   of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

14   examine but do not treat the claimant (examining physicians); and (3) those who neither examine

15   nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527,

16   416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians

17   are given greater weight than those of other physicians, because treating physicians are employed

18   to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue,

19   495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

20         Where a treating physician's opinion does not contradict other medical evidence, the ALJ

21   must provide clear and convincing reasons to discount it.  Lester, 81 F.3d at 830; see also

22   Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Where a treating physician's opinion

23   conflicts with other medical evidence, the ALJ must set forth specific and legitimate reasons

24   supported by substantial evidence in the record to reject it.  Lester, 81 F.3d at 830; see also

25   McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989).  "The opinion of an examining

26   physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."

27   Lester, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must

28   provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining

                                               6

physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician.  See id. at 830-31.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct."  Id.

Dr. Ziad R. Sawan first treated plaintiff on October 6, 1993.  [AR at 240.]  He performed plaintiff's cholecystectomy for her gallbladder problems that same month.  [AR at 233-35, 237.] After that, Dr. Sawan and his colleagues continued to treat plaintiff once every month to every several months from October 1993 to May 2002, and from February 2004 to January 2006, for chronic interstitial cystitis, fibromyalgia, Grave's disease, hyperthyroidism, irritable bowel syndrome, lupus, and Raynaud's disease, among other things.  [AR at 159-288, 332-415, 420-26, 529-63.]  On February 6, 2002, Dr. Sawan wrote a letter stating: "I have known [plaintiff] now for about 8 years.  During those years she has been suffering from serious medical problems which have really devastated her life and made her totally disabled from work."  Noting plaintiff's chronic abdominal pain, interstitial cystitis lupus, muscle aches, pelvic adhesions, and "severe arthritis," as well as her history of choleylithiasis, fibromyalgia, Grave's disease, and Raynaud's disease, Dr. Sawan opined that plaintiff "is in no condition to work at all" and that "she is totally disabled." [AR at 159.]

On August 14, 1994, Dr. Franklin Kozin examined plaintiff for litigation unrelated to her application for disability benefits.  [AR at 588-92.]  Dr. Kozin noted that plaintiff displayed symptoms of "chronic fatigue, ... chronic cystitis, and irritable bowel syndrome/bowel irritability," among other things.  [AR at 590.]  Based on his physical examination,[4] Dr. Kozin diagnosed plaintiff with "[a]typical [r]heumatic [s]yndrome," and noted that "[s]he presents with a fairly typical

---

[4]     As mentioned in the Court's March 14, 2011, Memorandum Opinion and Order in Case No. ED CV 10-1090-PLA, Dr. Kozin found, among other things, that the "proximal interphalangeal joints of both [of plaintiff's] hands [were] tender"; that plaintiff's cervical spine demonstrated "pain at the extremes of motion"; and that she had "[m]yofascial tender points ... throughout the neck, shoulder girdle region, lateral epicondyles and buttock areas."  [AR at 589, 810.]

1  picture of fibromyalgia which can be quite disabling generally and is particularly disabling in this

2  patient." [AR at 590.] Dr. Kozin opined that plaintiff "is at about 30-40% of normal function" due

3  to "fatigue, generalized myalgias, irritable bowel syndrome with diarrhea and cramps at

4  unexpected times, and bladder irritability with occasional 'accidents.'" [AR at 592.] Dr. Kozin

5  concluded that plaintiff "is unable to work at the present time because of severe fatigue and

6  myalgias and arthralgias." [AR at 590.]

7      In the March 14, 2011, Memorandum Opinion and Order in Case No. ED CV 10-1090-PLA,

8  this Court concluded that the 2006 ALJ and the instant ALJ, in the administrative decisions dated

9  April 6, 2006, and March 25, 2010, respectively, had failed to properly consider both Dr. Sawan's

10  and Dr. Kozin's opinions regarding plaintiff's impairments and the effects thereof. [See AR at 807-

11  11.] With regard to Dr. Sawan's opinion, the Court determined that the 2006 ALJ[5] failed to meet

12  the level of specificity required to reject a treating physician's opinion when he assigned little

13  weight to Dr. Sawan's opinion that plaintiff is totally disabled based on that ALJ's finding that "Dr.

14  Sawan references no clinical or diagnostic findings in support of his opinion." [AR at 809-10 (citing

15  AR at 18).] In addition, the Court found that the instant ALJ misstated the evidence in the record

16  when he concluded that Dr. Sawan "did not know [plaintiff] on or before [her] date last insured" of

17  December 31, 1993. [AR at 809 (citing AR at 692).] As to Dr. Kozin, the Court found that the

18  2006 ALJ improperly rejected that doctor's opinion where the ALJ concluded, without any evidence

19  of actual impropriety on the part of Dr. Kozin, that his opinion was "self-serving [evidence] created

20  for the purpose of civil litigation and financial gain." [AR at 811 (citing AR at 18).] The Court also

21  found that the instant ALJ improperly rejected Dr. Kozin's opinion as based on plaintiff's subjective

22  complaints -- which the ALJ rejected without providing any legally adequate reason -- and

23  mischaracterized the evidence where he stated that Dr. Kozin did not "conduct[] a tender points

24  test or other tests ... to support a fibromyalgia diagnosis or other medically determinable

25

26

27

28      [5]   The instant ALJ incorporated into his 2010 decision the 2006 ALJ's analysis of "the
objective medical evidence" and "the medical source opinions." [AR at 691-92.]

1  impairment." [AR at 810-11 (citing AR at 692-93).]  For these reasons, the Court remanded the

2  case for proper consideration of Dr. Sawan's and Dr. Kozin's opinions.  [AR at 810-11.][6]

3      In the November 18, 2011, administrative decision, the ALJ again assigned "little weight"

4  to Dr. Sawan's and Dr. Kozin's opinions.  [See AR at 786-87.]  Because Dr. Sawan's and Dr.

5  Kozin's opinions were contradicted by other medical opinions,[7] the ALJ was required to provide

6  specific and legitimate reasons to reject them.  The reasons provided by the ALJ, however, were

7  not legally adequate.

8      First, with respect to the "little weight" the ALJ gave to Dr. Sawan's "disability opinion" [AR

9  at 786], while an ALJ "is not bound by the uncontroverted opinions of [a] claimant's physicians on

10  the ultimate issue of disability" (Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)), he is

11  nevertheless required to give specific and legitimate reasons to reject such an opinion.  See

12  McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989) (remand warranted where ALJ failed

13  to give adequately specific and legitimate reasons for disregarding treating physician's testimony

14  that the claimant was disabled due to personality disorder).  The ALJ rejected Dr. Sawan's opinion

15  that plaintiff has been totally disabled for the time that he has "known" her because the ALJ found

16  that "the exacerbation of [plaintiff's] medical condition occurred mostly after her date last insured

17  [of December 31, 1993]," and because Dr. Sawan treated plaintiff "mostly for gallbladder

18  complaints" prior to her date last insured, which plaintiff testified resolved after her

19  cholecystectomy [see AR at 836].  [AR at 786.]  More weight generally is given to the opinions of

20  treating physicians because they "are likely to be the medical professionals most able to provide

21  _____

22  [6]    After this Court remanded plaintiff's case in Case No. ED CV 10-1090-PLA (on March 14,
    2011), but before the instant administrative decision was issued (on November 18, 2011), Dr.

23  Sawan reiterated his opinion concerning the impact of plaintiff's impairments on her ability to work
    in a letter dated August 8, 2011.  [AR at 821.]  In that letter, Dr. Sawan stated that "since the last

24  letter," plaintiff has "continue[d] to suffer the consequences of pulmonary and sinus sarcoidosis[,]
    which have worsened since she became allergic to Remicade for which she was showing some

25  modest response."  He added that plaintiff "continues to have chronic fatigue[,] arthralgias and

26  myalgias, chronic abdominal pain and reflux disease," and opined that she "is totally incapacitated
    at home and would never be able to return to the work force."  [Id.]

27

28  [7]    For example, a non-examining medical expert testified at the January 14, 2010, hearing that
    plaintiff had an RFC for modified light work prior to her date last insured.  [AR at 762-63.]

9

a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. § 404.1527(c)(2). As noted supra, Dr. Sawan saw plaintiff once every month to every several months for more than 10 years, performed surgery on her, and prescribed medications to her. [AR at 159-288, 332-415, 420-26, 529-63.] Based on the length of the treatment relationship and Dr. Sawan's experience with plaintiff, Dr. Sawan had the broadest range of knowledge regarding plaintiff's physical condition, which is supported by the treatment records. See 20 C.F.R. § 404.1527(c)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received); see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."). The ALJ's first reason to reject Dr. Sawan's opinion -- that "the exacerbation of [plaintiff's] medical condition occurred mostly after her date last insured" -- is not a specific and legitimate reason to reject Dr. Sawan's opinion that plaintiff has been unable to work since October 6, 1993 -- the date he first began to treat her. The fact that plaintiff's condition worsened after her date last insured does not rule out the possibility that she may have been disabled before that date. In addition, with respect to the ALJ's second reason, plaintiff's testimony that her gallbladder problems were resolved in 1993 does not preclude the possibility that her gallbladder condition, either alone or in combination with other conditions, may have prevented her from being able to work for at least 12 months before October 1993. Indeed, a May 11, 1992, CT scan -- which the ALJ cited in his decision -- revealed a "single dense focus in [plaintiff's] gallbladder suggesting cholelithiasis" as well as "[a] 2.5 cm simple cyst superior pole of the left kidney." [AR at 241.] Thus, neither of these reasons given by the ALJ was a legitimate reason to reject Dr. Sawan's opinion that plaintiff has been disabled from the time he first treated her.

1    In addition, the ALJ failed to discuss what weight, if any, he gave to Dr. Sawan's opinion

2    that plaintiff has had severe arthritis, chronic abdominal pain, choleylithiasis, fibromyalgia, Grave's

3    disease, interstitial cystitis, lupus, muscle aches, pelvic adhesions, and Raynaud's disease.  Thus,

4    it appears that the ALJ implicitly rejected this portion of Dr. Sawan's opinion, which was improper.

5    "Judicial review of an administrative decision is impossible without an adequate explanation of that

6    decision by the administrator."  DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding

7    that an ALJ's failure to explain why he disregarded medical evidence prevented "meaningful

8    judicial review"); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation

9    omitted) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong

10   reason, an explanation from the ALJ of the reason why probative evidence has been rejected is

11   required so that ... [the] [C]ourt can determine whether the reasons for rejection were improper.").

12   Indeed, to the extent the ALJ found Dr. Sawan's opinion ambiguous as to when certain of plaintiff's

13   impairments began,[8] such a finding would have triggered the ALJ's duty to recontact Dr. Sawan

14   in order to further develop the record in that regard.  See Smolen v. Chater, 80 F.3d 1273, 1288

15   (9thCir. 1996) (internal quotation marks and citation omitted) (the ALJ in a social security case has

16   an independent "special duty to fully and fairly develop the record and to assure that the claimant's

17   interests are considered[,] ... even when the claimant is represented by counsel"); see also 20

18   C.F.R. § 404.1512(e) (2011) (ALJ has duty to recontact a treating physician where the evidence

19   received from that physician is inadequate to determine disability, contains a conflict or ambiguity,

20   or is not based on medically acceptable techniques); White v. Barnhart, 287 F.3d 903, 908 (10th

21   Cir. 2001) (the responsibility to see that a treating physician is recontacted in the circumstances

22   described in 20 C.F.R. § 404.1512(e) (2011) belongs entirely to the ALJ; it is not part of the

23   claimant's burden).  The ALJ's duty to recontact Dr. Sawan concerning any portions of his opinion

24   the ALJ found ambiguous or inadequate to determine disability was particularly pronounced here

25

---

26   [8]  The Court notes that although the ALJ did not find at step two that plaintiff had the impairments of arthritis or lupus prior to her date last insured, he nevertheless considered, at step

27   three, whether plaintiff met any of the Listings for arthritis of a major joint (Listing 1.02), inflammatory arthritis (Listing 14.09), or systemic lupus erythematosus (Listing 14.02).  [AR at

28   784.]

because there is medical evidence both from before plaintiff's date last insured, and from a short period after her date last insured, that supports many of the diagnoses in Dr. Sawan's February 6, 2002, letter.  See Turner v. Comm'r of Social Security, 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("[w]hile the ALJ must consider only impairments (and limitations and restrictions therefrom) that [the claimant] had prior to the DLI, evidence post-dating the DLI is probative of [the claimant's] pre-DLI disability"); see also Lester, 81 F.3d at 832 (internal citation omitted) ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition").[9]

The Court has identified five impairments mentioned in Dr. Sawan's February 6, 2002, letter for which there is medical evidence from before plaintiff's date last insured, and/or from a short period after her date last insured.  First, as noted both supra and in the ALJ's decision, there is evidence of plaintiff's gallbladder problems from as early as May 1992.  Second, consistent with Dr. Sawan's opinion that plaintiff has had pelvic adhesions and chronic abdominal pain that have affected her ability to work, a September 1, 1992, physical examination note stated that plaintiff complained of pelvic pain for the previous five years; noted she had been diagnosed with endometriosis in 1990; and diagnosed her with "chronic pelvic pain [secondary] to endometriosis." [AR at 603.]  Plaintiff underwent surgery for her pelvic pain on the following day.  [AR at 601-02.] Despite that surgery, plaintiff visited an urgent care facility on May 7, 1994, complaining of having experienced pain on the right side of her abdomen for a period of six days, and was diagnosed with "[right lower quadrant] pain" and "adhesions."  [AR at 229.]  Less than two weeks later -- on May 16, 1994 -- plaintiff saw Dr. Sawan, still complaining of pain on her right side, and Dr. Sawan wrote on his treating note, "?adhesions," and on May 24, 1994, Dr. Sawan performed a pelvic and abdominal examination for plaintiff, from which he noted that plaintiff had "[p]ain along [the right] pelvic side wall."  [AR at 227-28.]  Third, in support of Dr. Sawan's irritable bowel syndrome

_____

[9]    Moreover, it appears that the ALJ in his decision acknowledged the relevance of evidence post-dating plaintiff's date last insured when he stated: "Here, most of [plaintiff's] medical records cover the period after her date last insured.  Nevertheless, the undersigned has considered statements made after that date regarding her medical condition on or before her date last insured."  [AR at 785.]

diagnosis, his treating note of February 28, 1994, reported that plaintiff was "[h]aving problems [with her] bowels"; another treating note dated March 10, 1994, rendered a diagnosis of "?[irritable bowel syndrome]/Crohn's?"; and Dr. Kozin's August 18, 2004, report[10] listed irritable bowel syndrome among plaintiff's problems.  [AR at 231-32, 590.]  Fourth, Dr. Sawan opined that plaintiff has interstitial cystitis,[11] which is supported by his May 24, 2004, treating note observing that plaintiff had "[f]requent [urinary tract infections -- historically] 3 cystitis/year");[12] a June 19, 1994, urgent care note reflecting that plaintiff had a urinary tract infection at that time; and Dr. Kozin's August 2004 report noting plaintiff's "chronic cystitis."  [AR at 226-27, 590.]  Finally, Dr. Sawan's opinion that plaintiff has had fibromyalgia is supported by Dr. Kozin's August 14, 1994, opinion that plaintiff "present[ed] with a fairly typical picture of fibromyalgia" [AR at 590], and the medical expert's testimony that "what [he] saw [from the evidence in plaintiff's case] was consistent with [a] diagnosis [of fibromyalgia]" as of 1993.  [AR at 761.]  Based on the above evidence that either predates or closely follows plaintiff's date last insured,[13] the ALJ erred by implicitly rejecting Dr. Sawan's opinion that plaintiff has had the impairments of pelvic adhesions, chronic abdominal pain, irritable bowel syndrome, interstitial cystitis, and fibromyalgia, without recontacting Dr. Sawan to attempt to determine whether plaintiff: (a) had those impairments prior to her date last insured and, (b) was disabled by virtue of those impairments.

---

[10]   As discussed infra, the ALJ also improperly rejected Dr. Kozin's opinions in his August 18, 2004, report.

[11]   Chronic interstitial cystitis is a condition of the bladder "[t]ypically [involving] urinary frequency and pain on bladder filling ... ."  Dorland's Illustrated Medical Dictionary, at 450 (29th ed. 2000).

[12]   Plaintiff testified that she was having "recurrent bladder infections, with traces of blood" due to interstitial cystitis in as early as 1988, but that those problems had not been diagnosed as interstitial cystitis at that time because she was "never sent to a specialist."  [AR at 635-36.]

[13]   There may also have been medical records for plaintiff dating between 1988 and 1990 supporting the existence of impairments prior to her date last insured, but it appears that all of the records from plaintiff's treating physician for that period -- Dr. William Rivera -- were unavailable by the time they were requested in 2001.  [AR at 152-53, 598.]

1    As to Dr. Kozin, the ALJ rejected his opinion in the 2011 administrative decision because:

2    (1) he found that "[i]t is apparent Dr. Kozin gave great weight to [plaintiff's] subjective complaints

3    in arriving at his opinion that [plaintiff] is disabled," whereas the ALJ found that plaintiff's "credibility

4    is questionable," and (2) Dr. Kozin's clinical findings showed that "there [was] no redness, swelling,

5    warmth, synovitis, effusion, or deformity in [plaintiff's] peripheral joints"; that plaintiff "had full range

6    of motion in the spine"; that her "muscle mass and tone were normal"; and that "there was no

7    evidence of focal atrophy or reduced strength."  [AR at 786-87 (citing AR at 589).]  The ALJ's

8    reasons for rejecting Dr. Kozin's opinion also were not sufficiently specific and legitimate.  See

9    McAllister, 888 F.2d at 602-03.  First, as discussed infra, the ALJ committed error by discounting

10   plaintiff's credibility (an error he also made in the 2010 administrative decision).  Thus, Dr. Kozin's

11   reliance on plaintiff's subjective complaints was not improper.  Moreover, an ALJ does not provide

12   a legitimate reason to reject the opinion of an examining physician "by questioning the credibility

13   of the patient's complaints where the doctor does not discredit those complaints and supports his

14   ultimate opinion with his own observations."  See Ryan v. Comm'r of Social Sec. Admin., 528 F.3d

15   1194, 1199-1200 (9th Cir. 2008) (citing Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001)).

16   Second, while some of Dr. Kozin's findings on examination were "normal," he also found (as noted

17   both supra and in the Court's March 14, 2011, Memorandum Opinion and Order) tender points in

18   various places on plaintiff's body.  Dr. Kozin rendered his ultimate opinion based on both plaintiff's

19   subjective complaints and his examination of plaintiff, and it was error for the ALJ to substitute his

20   opinion for that of a medical doctor.  Gonzalez Perez v. Sec'y of Health and Human Servs., 812

21   F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not substitute his own layman's opinion for the

22   findings and opinion of a physician."); see also Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.

23   1985) (ALJ erred by "independently reviewing and interpreting the laboratory reports" and thus

24   "impermissibly substituted his own judgment for that of a physician").  Finally, the ALJ did not

25   specifically mention, or give a reason to reject, Dr. Kozin's opinion that as of August 14, 1994,

26   plaintiff was "at about 30-40% of normal function" due to "fatigue, generalized myalgias, irritable

27   bowel syndrome with diarrhea and cramps at unexpected times, and bladder irritability with

28

1  occasional 'accidents.'" [AR at 592.]  The ALJ's implicit rejection of this portion of Dr. Kozin's

2  opinion was improper.  See DeLoatche, 715 F.2d at 150; Cotter, 642 F.2d at 706-07.

3        Since the ALJ again failed in the 2011 decision to provide sufficient reasons for rejecting

4  Dr. Sawan's and Dr. Kozin's opinions (even after this Court remanded the ALJ's first decision in

5  part to properly consider these physicians' findings), the Court now credits as true: (1) Dr. Sawan's

6  opinion that plaintiff has and/or has had the impairments of arthralgias and myalgias, arthritis,

7  choleylithiasis, chronic abdominal pain, chronic fatigue, fibromyalgia, Grave's disease, interstitial

8  cystitis, lupus, and Raynaud's disease,[14] and (2) Dr. Kozin's opinion that as of August 14, 1994,

9  plaintiff had an "[a]typical [r]heumatic [s]yndrome" that "present[ed] [as] a fairly typical picture of

10  fibromyalgia," and "[was] at about 30-40% of normal function" due to "fatigue, generalized

11  myalgias, irritable bowel syndrome with diarrhea and cramps at unexpected times, and bladder

12  irritability with occasional 'accidents.'" See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004)

13  (citing Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000)) ("Because the ALJ failed to provide

14  legally sufficient reasons for rejecting ... [the] treating physicians' opinions, we credit the evidence

15  as true."); see also Smolen, 80 F.3d at 1285-88, 1292; Varney v. Sec'y of Heath and Human

16  Servs., 859 F.2d 1396,1398 (9th Cir. 1988).  When a court reverses an ALJ's decision denying

17  social security benefits, "the proper course, except in rare circumstances, is to remand to the

18  agency for additional investigation or explanation."  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir.

19  2004) (quoting INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per

20  curiam)).  Here, even though the Court credits as true the Dr. Sawan's and Dr. Kozin's opinions

21  concerning plaintiff's impairments, and Dr. Kozin's opinion that plaintiff "[was] at about 30-40% of

22  normal function" as of August 14, 1994, the Court concludes that remand is necessary for the ALJ

23  -- after crediting those opinions -- to assess: (1) when plaintiff's impairments began, and (2)

24  whether she was disabled as a result of those impairments prior to her date last insured.

25

26  ————————————————

27     14  While Dr. Sawan also opined that plaintiff has been "totally disabled from work" for the

28  entire period that he has known her, i.e., since October 6, 1993, the ultimate determination of a

    claimant's disability is reserved to the Commissioner.  20 C.F.R. § 404.1527(e)(1).

1    **B.    PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

2         "To determine whether a claimant's testimony regarding subjective pain or symptoms is

3    credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

4    1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

5    objective medical evidence of an underlying impairment 'which could reasonably be expected to

6    produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344

7    (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the

8    claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively

9    suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons

10   for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504

11   F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be

12   considered in weighing a claimant's credibility include: (1) the claimant's reputation for

13   truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's

14   testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and

15   (5) testimony from physicians and third parties concerning the nature, severity, and effect of the

16   symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

17   Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's

18   credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532

19   (9th Cir. 1986).

20        Plaintiff testified concerning her pain, fatigue, muscle weakness, and photosensitivity, as

21   well as their effects on her ability to work, at her 2003 hearing and 2006 hearing.  [AR at 812

22   (citing AR at 625-48, 657-65).][15]

23   _____

24        [15]   In the March 14, 2011, Memorandum Opinion and Order in Case No. ED CV 10-1090-PLA,
     the Court summarized plaintiff's testimony at her 2003 and 2006 hearing as follows: "[P]laintiff
25   testified that, prior to her date last insured, she could not do housework independently because
     she tired easily and had abdominal pain; she needed assistance putting on some types of clothing
26   because of shoulder pain; she had difficulty cooking because she could not lift heavy pots or peel
     potatoes; she could not push a grocery cart, reach items on high shelves, or lift grocery bags into
27   her car due to hand and shoulder pain; she had trouble concentrating due to joint pain; she could
28                                                                                              (continued...)

16

1       The instant ALJ incorporated the 2006 ALJ's analysis of plaintiff's "alleged symptoms and

2    limitations" into his March 25, 2010, administrative decision, and did not perform any additional

3    evaluation of plaintiff's credibility.  [See AR at 691-93.]  In its March 14, 2011, Memorandum

4    Opinion and Order in Case No. ED CV 10-1090-PLA, the Court concluded that the ALJ failed, at

5    step two of the two-step credibility analysis, to provide clear and convincing reasons to discount

6    plaintiff's credibility.  [AR at 812-16.]  First, the Court noted that because none of the ALJ's second

7    through fifth reasons was proper, the ALJ could not discount plaintiff's credibility on the basis of

8    his first reason -- that the objective medical evidence did not support the degree of limitation

9    alleged by plaintiff.  Second, the Court found that each of the ALJ's other reasons was improper

10    because it either: cited no supporting evidence; was not sufficiently specific; or lacked explanation

11    or exploration such that it did not clearly and convincingly detract from plaintiff's credibility.  [Id.]

12    For these reasons, the Court remanded the case for proper assessment of plaintiff's credibility.

13    [AR at 816.]

14       At her September 22, 2011, hearing before the ALJ, plaintiff added to the statements she

15    previously made concerning her subjective symptoms by testifying that she left her job in 1988

16    because of fatigue, because the fluorescent lighting at that job bothered her, and because the

17    standing and lifting of boxes required by the job became too difficult.  [AR at 829.]  Plaintiff further

18    testified that "any light," including sunlight and recessed lighting, also bothers her.  [AR at 840.]

19    Plaintiff stated that she did not believe she could have performed a job with lighter requirements,

20    or a sedentary job, in 1988 because of her fatigue, which she experienced whether she was sitting

21    or standing.  [AR at 832, 834.]  Plaintiff also stated that in 1988, she was having "trouble with ...

22    [her] upper abdomen, which [she] later ... found out was [her] gallbladder"; trouble with her

23    stomach, which she later discovered was due to irritable bowel syndrome; and headaches and

24    mood swings, which she later learned were due to hyperthyroidism.  [AR at 835-36.]  Plaintiff

25

26    [15](...continued)
    not reliably drive herself even short distances because she became fatigued and needed

27    assistance getting into the car; nausea, difficulty concentrating, difficulty standing, and muscle
    weakness prevented her from working; she needed to rest often; she experienced photosensitivity;

28    and she had difficulty manipulating objects due to rheumatoid arthritis."  [AR at 812.]

testified that her irritable bowel syndrome was affecting her on a daily basis such that she frequently "had to stop what [she] was doing at work and go to the bathroom," and that her "boss would get angry with [her]" as a result.  [AR at 837-38.]  Plaintiff also testified that her condition has "progressed worse and worse [sic] each year" since 1988.  [AR at 833.]

In the November 18, 2011, administrative decision, the ALJ -- at step one of the two-step credibility analysis -- found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR at 785.]  The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC findings for plaintiff]." [Id.]  Thus, at step two, as the record contains no evidence of malingering by plaintiff,[16] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting her subjective symptom testimony.  See Lingenfelter, 504 F.3d at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.  However, none of the reasons provided by the ALJ in the 2011 decision satisfies this standard.

First, the ALJ stated that despite plaintiff's testimony at the 2011 hearing that she "could not have performed a seated occupation because of ... photosensitivity to all light sources," there is not "any reference to [photosensitivity] in her medical records." [AR at 787.]  This conclusion by the ALJ is a mischaracterization of the evidence in the record.  An October 23, 2002, progress note states that plaintiff "appear[ed] to have a photosensitive rash due to her systemic lupus erythematosus" [AR at 461], and an August 19, 2002, patient update note states that lights exacerbate plaintiff's pain and the associated swelling and rashes.  [AR at 470.]  In addition, in rejecting plaintiff's subjective symptom testimony on this ground, the ALJ relied on the fact that Dr. Sawan did not mention photosensitivity in either of his letters dated February 6, 2002, and

---

[16]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

1    August 8, 2011,[17] respectively, and Dr. Kozin did not mention photosensitivity in his August 14,

2    1994, evaluation.  Specifically, the ALJ stated, "[b]oth physicians painstakingly detail [plaintiff's]

3    complaints, yet neglect to discuss photosensitivity, which would be an obvious impediment to

4    sustaining gainful employment."  [AR at 787.]  This reasoning by the ALJ is not at all convincing.

5    Neither Dr. Sawan nor Dr. Kozin expressed that either letter or the evaluation was meant to

6    document *every* impairment plaintiff has or *all* the effects thereof, and thus the absence of any

7    mention of photosensitivity in these three documents does not undermine plaintiff's testimony

8    concerning this symptom.  Moreover, as discussed <u>supra</u>, the ALJ *rejected* Dr. Sawan's and Dr.

9    Kozin's opinions in those records concerning plaintiff's impairments, and therefore the ALJ cannot

10   selectively rely on those same opinions to attempt to support his determination on the issue of

11   plaintiff's credibility. Finally, to the extent the ALJ relied on plaintiff's ability to testify at the 2003

12   and 2011 hearings to reject her assertion that she was unable to testify at the 2010 hearing due

13   to photosensitivity, that reliance was also improperly selective.  <u>See</u> <u>Day v. Weinberger</u>, 522 F.2d

14   1154, 1156 (9th Cir. 1975) (An ALJ is not permitted to reach a conclusion "simply by isolating a

15   specific quantum of supporting evidence."); <u>Whitney v. Schweiker</u>, 695 F.2d 784, 788 (7th Cir.

16   1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an

17   opposite conclusion.").   The ALJ's first reason to discount plaintiff's credibility is not legally

18   adequate.

19         Second, to the extent the ALJ discounted plaintiff's credibility because plaintiff "testified her

20   gallbladder problem resolved in 1993" [<u>see</u> AR at 787], such testimony does not preclude the

21   possibility that her gallbladder condition may have prevented her from being able to work for at

22   least 12 months *before* October 1993, as noted <u>supra</u>, particularly since the record reflects

23   problems with her gallbladder in as early as May 1992.  Moreover, the successful treatment of

24   plaintiff's gallbladder problems in 1993 does not discredit her testimony that she has been unable

25

26

27   _____

      [17]   The ALJ incorrectly attributes Dr. Sawan's August 8, 2011, letter to Dr. Kozin.  [<u>See</u> AR at
28   787, 821.]

1   to work since 1988 because of her *other* impairments.  Therefore, this reason is not a clear and

2   convincing reason to discredit plaintiff's subjective symptom testimony.[18]

3          Third, the ALJ stated that although plaintiff "asserted she had irritable bowel syndrome with

4   symptoms of diarrhea, constipation, and nausea two to three times a week[,] ... the medical

5   records establish treatment and an accommodation of close proximity to a restroom would have

6   allowed her to sustain employment." [Id.] However, the ALJ cites no "medical records" to support

7   this conclusion, and thus this reason is not supported by substantial evidence, and also does not

8   reach the level of specificity required to clearly and convincingly discount a claimant's testimony.

9   See Moncada, 60 F.3d at 523; see also Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918.  The ALJ

10  did not give any clear and convincing reason to discount plaintiff's credibility.

11         Because the ALJ again failed in the 2011 decision to provide any legally adequate reason

12  to reject plaintiff's credibility, even after this Court remanded the ALJ's first decision in part for

13  failure to properly assess plaintiff's credibility, the Court now credits plaintiff's subjective symptom

14  testimony as true.  See Hammock v. Bowen, 879 F.2d 498, 503 (9th Cir. 1989) (despite fact that

15  application of the credit-as-true rule would not result in the immediate payment of benefits, rule

16  was extended to situation because "delay experienced by [the claimant in her application] ha[d]

17  been severe and because of [the claimant's] advanced age"); Vasquez v. Astrue, 572 F.3d 586,

18  591 (9th Cir. 2008, as amended July 8, 2009) (following Hammock and crediting improperly

19  rejected testimony as true where claimant was 58 years old and had waited over 6 years for her

20  disability determination).  Plaintiff is now 57 years old and has waited over 11 years since filing

21  her disability claim.  In light of these circumstances, and because the ALJ again failed to provide

22  clear and convincing reasons to discount plaintiff's credibility, the Court credits as true plaintiff's

23  allegations concerning the severity, persistence, and limiting effects of her pain, fatigue, and other

24  symptoms.  On remand, the ALJ should take into account plaintiff's subjective symptom testimony

25

26         [18]   Furthermore, the Court notes that while the ALJ found that plaintiff's statements concerning
    the severity of her subjective symptoms were not credible to the extent they were inconsistent with

27  the ALJ's RFC determination, the ALJ admitted that plaintiff's "fatigue complaints are well-
    documented in the record," and the ALJ failed to provide any reason to reject those complaints.

28  [AR at 785.]

1  in determining the extent to which any impairments the ALJ finds began prior to her date last

2  insured in fact limited her ability to work prior to that date.

3

4  **VI.**

5  **REMAND FOR FURTHER PROCEEDINGS**

6      As a general rule, remand is warranted where additional administrative proceedings could

7  remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

8  Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

9  In this case, remand is warranted for the ALJ to recontact Dr. Sawan in order to assess the onset

10  date of plaintiff's impairments, and determine whether she was disabled prior to her date last

11  insured as a result of any impairments she had before that date.  Specifically, the ALJ is instructed

12  on remand to first credit as true Dr. Sawan's opinion that plaintiff has had the impairments of

13  arthralgias and myalgias, arthritis, choleylithiasis, chronic abdominal pain, chronic fatigue,

14  fibromyalgia, Grave's disease, interstitial cystitis, lupus, and Raynaud's disease, and credit as true

15  Dr. Kozin's opinion that as of August 14, 1994, plaintiff had an "[a]typical [r]heumatic [s]yndrome"

16  that "present[ed] [as] a fairly typical picture of fibromyalgia," and "[was] at about 30-40% of normal

17  function" due to "fatigue, generalized myalgias, irritable bowel syndrome with diarrhea and cramps

18  at unexpected times, and bladder irritability with occasional 'accidents.'"  After crediting those

19  opinions as true, the ALJ shall recontact Dr. Sawan to determine when plaintiff's impairments

20  began.   Third, the ALJ shall credit as true plaintiff's allegations concerning the severity,

21  persistence, and limiting effects of her pain, fatigue, and other symptoms.  Finally, after crediting

22  plaintiff's subjective symptom testimony as true, the ALJ shall determine, in light of the evidence

23  as a whole, whether plaintiff was disabled as a result of any impairments the ALJ finds she had

24  prior to her date last insured.  The ALJ is further instructed to take any other action deemed

25  appropriate and consistent with this decision.

26  /

27  /

28  /

21

1    Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

2  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

3  for further proceedings consistent with this Memorandum Opinion.

4    **This Memorandum Opinion and Order is not intended for publication, nor is it**

5  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

6

7  DATED: February 21, 2013

8                                     _____
                                              PAUL L. ABRAMS
                                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28